1  CAROLINE McINTYRE, SBN 159005
   cmcintyre@be-law.com
2  JAIDEEP VENKATESAN, SBN 211386
   jvenkatesan@be-law.com
3  BERGESON, LLP
   111 N. Market Street, Suite 600
4  San Jose, CA 95113
   Telephone:    (408) 291-6200
5  Facsimile:    (408) 297-6000

6  Attorneys for Petitioner
   COALITION DEVELOPMENT LIMITED

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| In re Application of<br>COALITION DEVELOPMENT LIMITED<br><br>Petitioner. | Case No.<br><br>**MEMORANDUM OF LAW IN SUPPORT OF PETITION FOR AN ORDER COMPELLING DISCOVERY IN AID OF FOREIGN JUDICIAL PROCEEDING PURSUANT TO 28 U.S.C. SECTION 1782** |
|---|---|

**TABLE OF CONTENTS**

I. FACTUAL BACKGROUND ........................................................................................ 1

    A. Coalition's Research and Analytics Services ............................................... 1

    B. Coalition Employees Depart to Join McKinsey ........................................... 3

    C. McKinsey and Coalition's Investigations Uncover Gmail Accounts Used to Misappropriate Coalition Data .................................................................... 5

    D. Coalition Contacts Google to Preserve Data in the Gmail Accounts ........... 6

II. ARGUMENT ................................................................................................................. 6

    A. Coalition's Application Meets the Requirements of 28 U.S.C. §1782 ........ 6

    B. The Court Should Exercise Its Broad Discretion Under 28 U.S.C. §1782 and Grant the Petition ................................................................................... 8

        1. Google Will Not Be a Participant in the UK or India Proceedings ... 9

        2. A Tribunal in the UK and in India Would Be Receptive to the Subpoenaed Records ......................................................................... 10

        3. Coalition is Not Attempting to Circumvent Proof-Gathering Restrictions ... 11

        4. The Requested Discovery Is Not Unduly Intrusive or Burdensome ... 12

III. CONCLUSION ............................................................................................................ 13

i

MEMORANDUM OF LAW ISO PETITION FOR AN ORDER COMPELLING DISCOVERY IN AID OF FOREIGN JUDICIAL PROCEEDING PURSUANT TO 28 U.S.C. SECTION 1782
Case No.

# TABLE OF AUTHORITIES

Page(s)

**Federal Cases**

*Beluga Shipping GMBHv. Suzlong Energy, Ltd.*
    No. C 10-80034 JW (PVT), 2010 U.S. Dist. LEXIS 104705 (N.D. Cal. Sept. 23,
    2010) .................................................................................................................................... 8

*De Leon v. Clorox Co*.
    No. 19-mc-80296-DMR, 2020 U.S. Dist. Lexis 143949 (N.D. Cal August 10,
    2020) .................................................................................................................................... 7

*Euromepa v. R. Esmerian, Inc.*
    154 F.3d 24 (2d Cir. 1998) .................................................................................................. 8

*Govan Brown & Assoc. Ltd.*
    2010 U.S. Dist. LEXIS 88673(N.D. Cal August 10, 2020) ................................................. 8

*In re Alianza Fiduciaria S.A*.
    No. 13-81002-MC, 2013 U.S. Dist. LEXIS 171529 (S.D. Fla. October 13,
    2013) .................................................................................................................................. 10

*In re Application of Aldunate*
    3 F.3d 54 (2d Cir. 1993) ...................................................................................................... 8

*In re Application of Apple Retail UK Ltd*.
    No. 20-mc-80109-VKD, 2020 U.S. Dist. Lexis 119879 (N.D. Cal. July 9, 2020) ............ 10

*In re Application of the Children's Inv. Fund Found. (UK)*
    363 F. Supp. 3d 361 (S.D.N.Y. January 30, 2019) ..................................................... 11, 12

*In re Application of Servicio Pan Americano de Proteccion, C.A.*
    354 F. Supp. 2d 269 (S.D.N.Y. 2004) ............................................................................ 9, 10

*In re Borelli*
    No. 20-mc-80154-JSC, 2020 U.S. Dist. Lexis 174003 (N.D. Cal. September 22,
    2020) .................................................................................................................................... 7

*In re Eurasian Natural Res. Corp*.
    No. 18-mc-80041-LB, 2018 U.S. Dist. LEXIS 54857 (N.D. Cal. Mar. 30, 2018) ............ 11

*In re Google Inc*.
    No. 14-mc-80333-DMR, 2014 U.S. Dist. LEXIS 173085 (N.D. Cal. Dec. 15,
    2014) .................................................................................................................................. 11

*In re Grupo Qumma, S.A.*
    No. M8-85, 2005 U.S. Dist. LEXIS 6898 (S.D.N.Y. Apr. 22, 2005) ................................... 9

*In re IKB Deutsche Industriebank AG*
   No. 09-cv-7852, 2010 U.S. Dist. LEXIS 35924 (N.D. Ill. Apr. 8, 2010) ........................ 10, 11

*In re Imanagement Servs.*
   No. 05-89(FB), 2005 U.S. Dist. LEXIS 17025 (E.D.N.Y. Aug. 16, 2005) .............................. 9

*In re Kei Animal Clinic*
   20-mc-80158-AGT, 2020 U.S. Dist. Lexis 184670 (N.D. Cal. October 1, 2020) .................. 13

*In re Med. Corp. H&S*
   No. 20-mc-80117-VKD, 2020 U.S. Dist. Lexis 169795 (N.D. Cal. September
   14, 2020)................................................................................................................ 7, 10, 13

*In re Michael Wilson & Partners, Ltd.*
   No. 06-cv-02575-MSK-PAC (MEH), 2007 U.S. Dist. Lexis 54624 (D. Colo.
   July 27, 2007).................................................................................................................. 11

*In re Phillips*
   No. M 19-96, 2004 U.S. Dist. Lexis 16426 (S.D.N.Y Aug. 18, 2004) ..................... 8, 9, 11, 12

*In re Sapporo Ota Psychiatry Hosp*.
   No. 20-mc -80147-VKD, 2020 U.S. Dist. Lexis 170727 (N.D. Cal. September
   15, 2020)................................................................................................................... 7, 8, 13

*In re Varian Med. Sys. Int'l AG*
   No. 16-mc-80048-MEJ, 2016 U.S. Dist. LEXIS 38911 (N.D. Cal. March 24,
   2016)................................................................................................................................. 9

*In re West Face Capital, Inc*.
   No. 19-mc-80260-LB, 2019 U.S. Dist. Lexis 189331 (N.D. Cal. October 31,
   2019)................................................................................................................................. 7

*Intel Corp. v. Advanced Micro Devices, Inc*.
   542 U.S. 241 (2004) ................................................................................................. *passim*

*Optimal Invs. Servs. S.A. v. Berlamont* (*In re Application for an Order Pursuant to
   28 U.S.C. § 1782*)
   773 F.3d 456 (2d Cir. 2014).............................................................................................. 8

**Federal Statutes**

28 U.S.C. § 1782 ....................................................................................................... *passim*

28 U.S.C. § 1782(a).................................................................................................... 6, 7, 9

Petitioner Coalition Development Limited ("Coalition") submits this Memorandum of Law, together with the Declaration of Hugo Plowman, dated March 17, 2021 and the exhibits annexed thereto ("Plowman Declaration"), the Declaration of Vivek Saxena, dated March 17, 2021 and the exhibits annexed thereto ("Saxena Declaration"), in support of its Petition for an Order Compelling Discovery in Aid of Foreign Judicial Proceeding Pursuant to 28 U.S.C. section 1782 ("Petition"), which seeks an Order authorizing the issuance of the subpoena attached as Exhibit A to the Proposed Order submitted herewith (the "Subpoena") directing Google LLC ("Google") to produce documents in accordance with Schedule A of the Subpoena, for purposes of discovery in connection with legal proceedings reasonably contemplated in the United Kingdom ("UK") and India.

## I.     FACTUAL BACKGROUND

Coalition is a research and analytics company incorporated in England and with offices in the UK and India. It brings this Petition to obtain authorization to serve the Subpoena on Google to obtain data that is urgently needed to progress civil actions in the UK and India to address the significant damages caused by its former employees' misappropriation of confidential data and breaches of employment agreements, and to prevent additional harm. Coalition intends on progressing proceedings in the UK and India based in part on the identifying and other information relating to Google accounts that were used to misappropriate Coalition's confidential data – information that likely only Google can provide.

### A.     Coalition's Research and Analytics Services

Coalition is a market leading research and analytics company incorporated in England. Plowman Declaration, ¶4; Saxena Declaration, ¶4. It focuses on corporate and investment banking market analysis for the financial services industry, including for the world's largest banks and their institutional and corporate clients. Plowman Declaration, ¶4; Saxena Declaration, ¶4. Coalition delivers deep and unique analytical research on Corporate and Investment Banks ("CIBs"). Saxena Declaration, ¶18. Coalition's operations are run primarily in London, Mumbai, Singapore, and New York. Plowman Declaration, ¶4; Saxena Declaration, ¶4. In Mumbai, Coalition conducts its operations through a business division of Crisil, its indirect parent company.

1

MEMORANDUM OF LAW ISO PETITION FOR AN ORDER COMPELLING DISCOVERY IN AID OF
FOREIGN JUDICIAL PROCEEDING PURSUANT TO 28 U.S.C. SECTION 1782
Case No.

Plowman Declaration, ¶4; Saxena Declaration, ¶4.

As part of Coalition's business, it invests considerable time and expense in creating a range of confidential and proprietary data on matters such as the revenue and headcount of corporate and investment banks ("Coalition Data").  Saxena Declaration, ¶19.  The three-step analysis involves (i) leveraging Coalition's deep knowledge of the financial services industry to analyze and break down the publicly reported revenues into more granular sub-products, (ii) using its historical data sets to provide informed estimates as to the performance of each sub-product and (iii) conducting detailed and contemporaneous in-person interviews to test and verify the data.  *Id*.  The Coalition Data is then organized and published pursuant to Coalition's bespoke CIB taxonomy (the "Coalition Taxonomy").  *Id*.  Coalition licenses that data to its banking clients for considerable sums.  Coalition has invested and continues to invest considerable time and expense in developing its Coalition Data and it is entitled to protect it against unauthorized use by third parties.  *Id.*, ¶20.  The economic value of such data is evident from the fact that Coalition's clients, who include the top financial institutions and banks around the globe, pay considerable sums to license that data from Coalition.  *Id,* ¶20.

Another part of Coalition's business involves its banking clients sharing confidential and sensitive data concerning their performance and underlying customers, such as, for example, the revenue generated from their corporate and institutional clients.  *Id*, ¶21.  Coalition runs analytics on the data for the relevant bank.  Under the terms of Coalition's arrangements with the banks, it is under strict obligations to keep its clients' data safe and confidential. In some cases, Coalition is also required to notify the client if it discovers there has been any leak or compromise involving client data (such as unauthorized access or theft) and to take certain remediation steps prescribed by them.  *Id*.

In order to safeguard the data it generates and holds, Coalition invests heavily in a robust security controls framework which covers people, processes, and technology.  It has achieved some of the highest levels of certifications on information security, including ISO 270001 and SOC 2 Type II attestation.  *Id*, ¶22.

///

### B. Coalition Employees Depart and Later Join McKinsey

In November 2019 and January 2020 respectively, Paul Johny and George Kuznetsov joined McKinsey & Company, Inc. (the "Third Party") as Partners where they launched a competing business (the "Third Party Business"). *Id.*, ¶24. Mr. Kuznetsov had been Head of Research and Analytics at Coalition and sat on its Board of Directors. *Id.* Thereafter, nine senior ex-employees of Coalition from across the UK, India, Singapore, and the U.S. joined or accepted offers to join the Third Party Business:

|    | Name | Position at Coalition/Crisil | Location | Date of resignation | Employer |
|----|------|------------------------------|----------|---------------------|----------|
| 1  | George Kuznetsov | Head of Research and Analytics, Director of Coalition | London | 9 July 2019 | Coalition |
| 2  | Paul Johny | Head of Client Analytics | London | 9 July 2019 | Coalition |
| 3  | Jayesh Patil | Head of Competitor Research, India | Mumbai | 16 October 2019 | Crisil |
| 4  | Darshana Dagha | Head of Client Analytics, India | Mumbai | 8 November 2019 | Crisil |
| 5  | Jitendra Dodeja | VP - Competitor Research, India | Mumbai | 18 November 2019 | Crisil |
| 6  | Gaurav Sharma | VP – Client Analytics, India | Mumbai | 19 November 2019 | Crisil |
| 7  | Ming Lan Fu | Head of Asia | Singapore | 10 April 2020 | Coalition Developments Singapore PTE Ltd |
| 8  | Melissa Mckenna | Relationship Director | New York | 9 March 2020 | Crisil Irevna US LLC |
| 9  | Lydia Emsley | Senior Relationship Manager | London | 10 May 2020 | Coalition |
| 10 | Jeremy Stevenson | Relationship Director | London | 22 July 2020 | Coalition |
| 11 | Amrit Shahani | Head of Competitor Analytics | London | 31 July 2020 | Coalition |

Saxena Declaration, ¶25.

Each of the above-named 11 employees shall hereafter be referred to as the "Ex-

3

Employees". *Id.*, ¶26. Under the terms of their respective employment contracts, each of the Ex-Employees was subject to post-termination restrictive covenants ("PTRs") for a period of between three months and 12 months from the date of termination of their contracts (less any time spent on Garden Leave). Plowman Declaration, ¶8; Saxena Declaration, ¶26. Each of the Ex-Employees owed Coalition or Crisil continuing duties of confidentiality and were under an obligation to deliver up to Coalition or Crisil any Coalition Data in their possession or control. Plowman Declaration, ¶8; Saxena Declaration, ¶26.

Following their respective resignations, Coalition, Crisil or their legal advisers sent each of the Ex-Employees letters reminding them of their post-termination duties. Saxena Declaration, ¶27. In some cases, the letters also detailed specific concerns which had arisen around the circumstances surrounding their departure. *Id.* In each case, the Ex-Employee either did not respond to the letter or responded to confirm that they had adhered to the terms of their contracts and would continue to do so going forward. *Id.*

In addition to writing to the Ex-Employees, Coalition raised concerns with the Third Party about its hiring of former Coalition and Crisil employees and the potential breaches by those individuals of the PTRs and their confidentiality obligations. *Id.*, ¶28. On each occasion until recently, the Third Party sought to allay Coalition's concerns. *Id.*

Coalition then discovered that the Third Party Business issued a quarterly Global markets report that included revenue and headcount data that was believed to be based on data belonging to Coalition, and likely misappropriated by the Ex-Employees for use at the Third Party Business. Plowman Declaration, ¶¶ 10-11; Saxena Declaration, ¶¶31-33. Coalition discovered that the Quarterly Report used data points that were broadly identical to the equivalent data points in the Coalition Data – but did so at a fraction of the time that Coalition took to compile and analyze years of data. Saxena Declaration, ¶¶31-33. The Quarterly Report also adopted a taxonomy highly similar to the Coalition Taxonomy – although there is no "market standard" taxonomy used by analytics benchmarking companies. Saxena Declaration, ¶32.5.

///

///

### C.  The Third Party and Coalition's Investigations Uncover Gmail Accounts Used to Misappropriate Coalition Data

Coalition contacted the Third Party and provided an analysis of the Third Party Business's Quarterly Report showing how it could only have been produced using Coalition Data. Plowman Declaration, ¶12; Saxena Declaration, ¶34. Coalition and the Third Party exchanged correspondence, after which the Third Party agreed to conduct an internal investigation on a confidential basis. Plowman Declaration, ¶13; Saxena Declaration, ¶¶34-39. The Third Party's investigation in fact uncovered misappropriation of Coalition Data, which led to the firing, or withdrawing of offers to, several of the Ex-Employees. Plowman Declaration, ¶14; Saxena Declaration, ¶¶ 40-42. The Third Party disclosed the names of nine Ex-Employees and three current Crisil employees for whom they had evidence that were involved in sharing or diverting Coalition Data. Plowman Declaration, ¶19; Saxena Declaration, ¶45.

The Third Party also discovered evidence that several of the Ex-Employees had used four gmail accounts to extract and share Coalition Data: bangkok20190101@gmail.com; bangkokmc2012@gmail.com; brock60708090@gmail.com and jc60708090@gmail.com (the "Gmail Accounts"). Plowman Declaration, ¶19; Saxena Declaration, ¶¶10, 45. Coalition also learned that all emails within the Gmail Account had been deleted – suggesting that these accounts were set up solely to misappropriate and share Coalition Data. Plowman Declaration, ¶22; Saxena Declaration, ¶49. Coalition also discovered that at least one of the Gmail Accounts was linked to Google Docs, where evidence relevant to contemplated legal proceedings in the UK appears to be stored (the Gmail Accounts together with any other associated Google account (such as Google Docs) are together the "Google Accounts"). Saxena Declaration, ¶¶12, 54.

The Third Party told Coalition that it does not have possession of and has not seen the underlying emails in the Gmail Accounts. Plowman Declaration, ¶23; Saxena Declaration, ¶50. Coalition can only learn the identities of the users of the Google Accounts and information relating to the access and deletions of data within the Google Accounts from Google. Plowman Declaration, ¶24; Saxena Declaration, ¶¶50.

Coalition has instructed its UK counsel, Mishcon de Reya LLC ("MdR") to initiate

proceedings against four of the Implicated Individuals located in England as soon as possible (the "UK Proceeding"). Plowman Declaration, ¶25. The UK Proceeding will arise out of causes of action for breach of contract, breaches of equitable duties of confidence, breaches of fiduciary duty, inducing breach of contract, and unlawful means conspiracy. Plowman Declaration, ¶26. Coalition will likely apply for interim and final relief against the defendants in the UK Proceeding, including an order compelling them to deliver up any confidential information remaining in their possession and restraining them from misusing it going forward. Plowman Declaration, ¶27.

Crisil intends to initiate proceedings in the Hon'ble Bombay High Court in Mumbai, India against the Implicated Individuals located in India (the "India Proceeding"). Saxena Declaration, ¶60. The India Proceeding will arise out of breaches of the post-termination covenants in the defendants' employment contracts, including breaches of the confidentiality obligations in those agreements. *Id.*

### D. Coalition Contacts Google to Preserve Data in the Google Accounts

On March 9, 2021, MdR wrote to the Legal Department of Google informing it of the aforementioned facts and stating that Coalition planned to file the Petition. Plowman Declaration, ¶22, Exhibit B. Coalition also requested that Google preserve all data relating to the Gmail Accounts. At the time of filing, Google has not responded other than by way of an automatic email reply. *Id.*, Exhibit D.

On March 14, 2021, MdR wrote a further letter to the Legal Department of Google after the discovery that one of the Gmail Accounts was linked to Google Docs. That letter requested that Google preserve data and information relating to other Google applications associated with the Gmail Accounts (including Google Docs) as well as the Gmail Accounts themselves. Plowman Declaration, ¶22, Exhibit C. At the time of filing, Google has not responded other than by way of an automatic email reply. *Id.*, Exhibit D.

## II. ARGUMENT

### A. Coalition's Application Meets the Requirements of 28 U.S.C. §1782

Pursuant to 28 U.S.C. §1782, a district court may order the production of documents for use in a foreign legal proceeding, unless the disclosure would violate a legal privilege. 28 U.S.C.

§1782(a); *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 246-247 (2004); *In re In re Sapporo Ota Psychiatry Hosp.*, No. 20-mc -80147-VKD, 2020 U.S. Dist. Lexis 170727, at * 4 (N.D. Cal. September 15, 2020). Such an order may be made "upon the application of any interested person and may direct that . . . the document or other thing be produced, before a person appointed by the Court." 28 U.S.C. §1782(a).

Section 1782(a) imposes three threshold requirements Coalition must satisfy: (1) the person from whom the discovery is sought must reside in the district where the application is made; (2) the discovery sought is for use in a proceeding in a foreign or international tribunal, and (3) the application is made by any "interested person". *In re Borelli*, No. 20-mc-80154-JSC, 2020 U.S. Dist. Lexis 174003, at *3 (N.D. Cal. September 22, 2020).

The Petition meets each of these requirements. First, the discovery is sought from Google, which has its principal place of business in this district. *Sapporo*, 2020 U.S. Dist. Lexis 17027 at *6; *In re West Face Capital, Inc.*, No. 19-mc-80260-LB, 2019 U.S. Dist. Lexis 189331, at *4 (N.D. Cal. October 31, 2019).[1]

Second, the discovery is being sought for use in a foreign proceeding that is within reasonable contemplation. See *Intel*, 542 U.S. at 259 (legal proceedings that are within reasonable contemplation satisfy section 1782(a); such proceedings need not be pending); *In re In re Med. Corp. H&S*, No. 20-mc-80117-VKD, 2020 U.S. Dist. Lexis 169795, at *6 (N.D. Cal. September 14, 2020) (same). As explained above Coalition brings this Petition to obtain information regarding the use and access of the Google Accounts, which were likely used to misappropriate Coalition Data. The discovery is sought for use in the U.K. and India Proceedings, which are unquestionably foreign tribunals. See *Intel*, 542 U.S. at 258 (interpreting the term "tribunal" in Section 1782 to include "investigating magistrates, administrative and arbitral tribunals, and quasi-judicial agencies, as well as conventional civil, commercial, criminal, and administrative courts");

---

[1] To the extent that the requested information is in the possession of an international subsidiary of Google, such information is within Google's control such that the requirement that the respondent be located in this district is met. See *De Leon v. Clorox Co.*, No. 19-mc-80296-DMR, 2020 U.S. Dist. Lexis 143949, at *16-17 (N.D. Cal August 10, 2020) (granting section 1782 petition where Clorox had legal right to obtain documents from international subsidiaries).

7
MEMORANDUM OF LAW ISO UNOPPOSED PETITION FOR AN ORDER COMPELLING DISCOVERY IN AID OF FOREIGN JUDICIAL PROCEEDING PURSUANT TO 28 U.S.C. SECTION 1782
Case No.

*Optimal Invs. Servs. S.A. v. Berlamont* (*In re Application for an Order Pursuant to 28 U.S.C. § 1782)*, 773 F.3d 456, 462 (2d Cir. 2014); *In re Phillips*, No. M 19-96, 2004 U.S. Dist. Lexis 16426 (S.D.N.Y Aug. 18, 2004) (granting leave to conduct discovery pursuant to Section 1782 in aid of a UK proceeding).

Finally, Coalition is an interested person under the statute as the putative defendants in the contemplated UK and India proceedings are former Coalition employees and it is instituting the proceedings in the UK (and through its indirect parent, Crisil) in India. *Sapporo*, 2020 U.S. Dist. Lexis 17027, at *6.

### B.  The Court Should Exercise Its Broad Discretion Under 28 U.S.C. §1782 and Grant the Petition

Further, the Court should exercise its discretion under section 1782 and grant the Petition. The twin goals of Section 1782 are, first, to provide "an efficient means for federal courts to assist foreign tribunals and litigants before such tribunals," and second, to encourage "foreign countries to provide similar assistance by setting an example." *Govan Brown & Assoc. Ltd.*, 2010 U.S. Dist. LEXIS 88673, at *6 (N.D. Cal August 10, 2020) (*citing Euromepa v. R. Esmerian, Inc.*, 154 F.3d 24, 28 (2d Cir. 1998)). Where, as here, the statutory requirements under Section 1782 are met, the Court has broad discretion to apply Section 1782 to achieve these goals. *See Beluga Shipping GMBHv. Suzlong Energy, Ltd.*, No. C 10-80034 JW (PVT), 2010 U.S. Dist. LEXIS 104705, at *7 (N.D. Cal. Sept. 23, 2010) (granting Section 1782 petition in part, holding that "[d]istrict courts have broad discretion to achieve [Section 1782] goals"). Moreover, courts are encouraged to exercise their discretion and grant the requested discovery. *See In re Application of Aldunate*, 3 F.3d 54, 57 (2d Cir. 1993), *quoting* from the record of the U.S. Senate, S. Rep. No. 88-1580, at ¶ 9 (1964), *as reprinted in* 1964 U.S.C.C.A.N. 3782, 3788 (noting that the "primary intent of [Section 1782] was to 'clarify and liberalize[ ] existing U.S. procedures for assisting foreign and international tribunals and litigants in obtaining oral and documentary evidence in the United States'").

To determine whether an order under section 1782 is appropriate, the Supreme Court in *Intel Corp.* established four factors that a court should consider in exercising its discretion to

decide a Section 1782 request: (i) whether "the person from whom discovery is sought is a participant in the foreign proceeding," in which case "the need for § 1782(a) aid generally is not as apparent as it ordinarily is when evidence is sought from a nonparticipant in the matter arising abroad;" (ii) "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance;" (iii) "whether the § 1782(a) request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States;" and (iv) whether a request is "unduly intrusive or burdensome." *Intel Corp.*, 542 U.S. at 264-265.

As set forth below, Coalition's application should be granted because all of the *Intel* factors weigh in favor of granting assistance to Coalition. *See, e.g., In re Application of Servicio Pan Americano de Proteccion, C.A.*, 354 F. Supp. 2d 269, 275 (S.D.N.Y. 2004) (granting application for discovery upon consideration of *Intel* considerations and a determination that, as a whole, the information requested was directly relevant to the party's defense in the foreign suit and most efficiently obtained in the U.S.); *In re Grupo Qumma, S.A.*, No. M8-85, 2005 U.S. Dist. LEXIS 6898 (S.D.N.Y. Apr. 22, 2005) (granting request for discovery upon finding factors in support of Section 1782 application more persuasive than those in opposition).

### 1. Google Will Not Be a Participant in the UK or India Proceedings

The Supreme Court in *Intel* recognized that the need for the assistance of U.S. courts is most apparent where discovery is sought from a non-participant in the underlying foreign proceeding. *See Intel*, 542 U.S. at 264 ("In contrast, nonparticipants in the foreign proceeding may be outside the foreign tribunal's jurisdictional reach; hence, their evidence, available in the United States, may be unobtainable absent § 1782(a) aid."); *In re Phillips*, 2004 U.S. Dist. LEXIS 16426 (authorizing discovery from non-parties to action pending before the English High Court of Justice); *In re Imanagement Servs.*, No. 05-89(FB), 2005 U.S. Dist. LEXIS 17025 (E.D.N.Y. Aug. 16, 2005) (holding that the first factor clearly weighs in favor of granting petition where parties from whom disclosure is sought were not parties to underlying foreign action for which discovery was needed).

In determining whether this factor supports granting an application, "the key issue is

whether the material is obtainable through the foreign proceeding. *In re Varian Med. Sys. Int'l AG*, No. 16-mc-80048-MEJ, 2016 U.S. Dist. LEXIS 38911, at *3 (N.D. Cal. March 24, 2016). Google will not be a party to the contemplated UK or India Proceedings, and the documents sought by the application are located in the U.S. and thus beyond the reach of a tribunal in either the UK or India. See *Med. Corp*, 2020 U.S. Dist. Lexis 169795, at *7 (granting petition in part because Google cannot be compelled to produce documents to a Japanese court). In addition, the likelihood of evidence spoliation in this matter counsels permitting discovery here, as it would ensure that relevant evidence in Google's possession, custody, and control is preserved and collected. See *In re Alianza Fiduciaria S.A.*, No. 13-81002-MC, 2013 U.S. Dist. LEXIS 171529, at *4 (S.D. Fla. October 13, 2013) (granting Section 1782 petition where applicants contended was the discovery was proper due to concerns about destruction of evidence). Because the documents are readily available in this jurisdiction but not obtainable in a proceeding in the UK or India, this factor weighs in favor of granting the Petition.

### 2. A Tribunal in the UK and in India Would Be Receptive to the Subpoenaed Records

Where discovery pursuant to Section 1782 will produce information that is relevant to the underlying foreign dispute, it is more likely that the foreign court will be "receptive" to such evidence. *See In re Application of Servicio Pan Americano*, 354 F. Supp. 2d at 274 (granting 1782 Petition upon finding that "the discovery Pan Americano is seeking would be readily available and relevant to the litigation [in Venezuela]").

Here, the relevancy of the discovery sought and, thus, a UK and Indian tribunals' likely receptivity to the same, are manifest. The subpoenaed records are highly relevant to the UK and India Proceedings given that the Ex-Employees who would be parties in those proceedings used the Google Accounts to misappropriate Coalition Data. The information obtained from Google will be critical in adjudicating both proceedings.

Courts in this and other districts have recognized the receptiveness of the U.K. to the use of discovery obtained through Section 1782. *In re Application of Apple Retail UK Ltd.*, No. 20-mc-80109-VKD, 2020 U.S. Dist. Lexis 119879, at *7 (N.D. Cal. July 9, 2020; *In re IKB Deutsche*

10

MEMORANDUM OF LAW ISO UNOPPOSED PETITION FOR AN ORDER COMPELLING DISCOVERY IN
AID OF FOREIGN JUDICIAL PROCEEDING PURSUANT TO 28 U.S.C. SECTION 1782
Case No.

*Industriebank AG*, No. 09-cv-7852, 2010 U.S. Dist. LEXIS 35924, at *10 (N.D. Ill. Apr. 8, 2010) ("District courts routinely allow applicants to obtain third-party Section 1782 discovery related to litigation pending in the United Kingdom."); *In re Michael Wilson & Partners, Ltd.*, No. 06-cv-02575-MSK-PAC (MEH), 2007 U.S. Dist. Lexis 54624, at * 13 (D. Colo. July 27, 2007) (concluding that England would not be "hostile" to the discovery requested); *Phillips*, 2004 U.S. Dist. LEXIS 16426, at *6-7 (finding no "reason to suppose that the government of the United Kingdom would disfavor granting Applicants' relief under § 1782").  Similarly, section 1782 discovery has been ordered for use in an Indian proceeding.  *In re Application of the Children's Inv. Fund Found. (UK),* 363 F. Supp. 3d 361, 370 (S.D.N.Y. January 30, 2019) (ordering discovery under section 1782 for use in Indian criminal proceedings).

### 3. Coalition is Not Attempting to Circumvent Proof-Gathering Restrictions

Under this factor, the Court considers whether Coalition's request for discovery "conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States." *Intel*, 542 U.S. at 265.  Courts have found that this factor weighs in favor of discovery where there is "nothing to suggest that [the applicant] is attempting to circumvent foreign proof-gathering restrictions." *In re Google Inc*., No. 14-mc-80333-DMR, 2014 U.S. Dist. LEXIS 173085, at *3 (N.D. Cal. Dec. 15, 2014); see also *In re Eurasian Natural Res. Corp*., No. 18-mc-80041-LB, 2018 U.S. Dist. LEXIS 54857, at *3 (N.D. Cal. Mar. 30, 2018) (finding that the third *Intel* factor weighed in favor of discovery where there was "no evidence" of an attempt to circumvent foreign proof-gathering restrictions or policies).

Here, there are no policies prohibiting discovery of this information in the UK or India that Coalition is trying to circumvent.  United States courts have determined that Section 1782 relief is not contrary to the proof gathering limits or policies of the United Kingdom, and have consistently granted relief thereunder to aid proceedings in English courts.  *See, e.g., Intel*, 542 U.S. at 262 ("House of Lords ruled that nondiscoverability under English law did not stand in the way of a litigant in English proceedings seeking assistance in the United States under § 1782."); *In re IKB Deutsche Industriebank AG*, 2010 U.S. Dist. LEXIS 35924, at *10 ("District courts routinely

11

MEMORANDUM OF LAW ISO UNOPPOSED PETITION FOR AN ORDER COMPELLING DISCOVERY IN AID OF FOREIGN JUDICIAL PROCEEDING PURSUANT TO 28 U.S.C. SECTION 1782
Case No.

allow applicants to obtain third-party Section 1782 discovery related to litigation pending in the United Kingdom."); *In re Phillips*, 2004 U.S. Dist. LEXIS 16426, at *6 ("Nor is there any reason to suppose that the government of the United Kingdom would disfavor granting Applicants relief under § 1782."). There is also no evidence that the Indian court would refuse to consider the evidence produced by Google. See *Children's Inv. Fund*, 363 F. Supp. 3d at 373.

Accordingly, this factor weighs in favor of granting the Petition.

### 4. The Requested Discovery Is Not Unduly Intrusive or Burdensome

The narrowly-tailored discovery that Coalition requests is limited to documents identifying the users of the Google Accounts, as well as information relating to access and deletion. The subpoenaed records are electronically stored, readily accessible, and instantly transportable worldwide. Google is a sophisticated technology company, and is able to electronically produce the subpoenaed records.

Coalition has accounted for any potential privacy interests of users by providing for the following procedure:

(1) Coalition shall serve copies of the Subpoena, this Order, the Petition, the Memorandum of Law upon which it was issued, and the Declarations of Hugo Plowman and Vivek Saxena, upon Google within five (5) calendar days.

(2) Within 5 calendar days of service of the Subpoena and this Order, Google shall notify each of the account holders and account users of the Google Accounts that the requested information is sought by Coalition, and shall serve a copy of the Order on each such person.

(3) Google and/or any person whose information is sought may, within 14 days from the date of the notice, file a motion in this Court contesting the subpoena (including a motion to quash or modify the subpoena).

(4) Alternatively, any person whose identifying information is sought may, within 14 days from the date of the notice, advise Google in writing of any objections he or she has to the disclosure of the information and the bases for any such objections. Within 5 days of receipt of any such objections, Google shall so advise the Court.

(5) If any person contests the subpoena or objects to any portion of it, Google shall

preserve, but not disclose, the information sought by the subpoena pending resolution of that contest or objection.

(6) Any information Coalition obtains pursuant to the subpoena may be used only for purposes of the anticipated action before a UK or India tribunal, or as required by the laws of UK and/or India with regards to disclosure, and Coalition may not otherwise release such information or use it for any other purpose, absent a Court order authorizing such release or use.

Courts in this district have found that subpoenas served under the foregoing procedures are not unduly burdensome or intrusive, and have granted petitions to serve such subpoenas.  See *Med Corp.*, 2020 U.S. Dist. Lexis 169795, at *14; *Sapporo*, 2020 U.S. Dist. Lexis 170727, at *13; *In re In re Kei Animal Clinic*, 20-mc-80158-AGT, 2020 U.S. Dist. Lexis 184670, at *2-3 (N.D. Cal. October 1, 2020).[2]  Accordingly, this factor weighs in favor of granting the Petition.

### III.  CONCLUSION

As demonstrated above, Coalition's Petition amply satisfies all three statutory requirements of Section 1782, and the *Intel* factors all weigh in favor of this Court exercising its broad discretion to grant this Petition.  Coalition therefore respectfully requests that the Court issue an order permitting issuance of the Subpoena attached as Exhibit A to the Proposed Order submitted herewith.

Dated:  March 17, 2021                     BERGESON, LLP

By:    /s/ Jaideep Venkatesan
            Jaideep Venkatesan

Attorneys for Petitioner
COALITION DEVELOPMENT LIMITED

---

[2] In view of the urgency of the Petition as established by the Plowman and Saxena Declarations, Coalition respectfully requests a more expedited procedure than that provided in the aforementioned cases, but that will still provide Google and the users of the Google Accounts sufficient notice to raise any objections to the Court.